1
2
3
4
5
6
7
8
9        IN THE UNITED STATES DISTRICT COURT
10       OF THE EASTERN DISTRICT OF WASHINGTON
11                    AT SPOKANE
12

13   KYLE E. NORTH,                          Case No.   2:18-cv-00260 SMJ
14
15                        Plaintiff,          ANSWER TO PLAINTIFF'S
16   vs.                                      COMPLAINT FOR DAMAGES
17   CITY OF PULLMAN POLICE                   **WITH JURY DEMAND**
18   DEPARTMENT, DOUG ANDERSON,
     an individual, MICHAEL
19   SONTGERATH, an individual, GARY
20   JENKINS, an individual, and
21   CHRISTIAN TENNANT, an individual,
22
23                        Defendants.
24

25              **PRELIMINARY STATEMENT**
26
27        The great majority of the factual allegations contained in plaintiff's
28   Complaint are based on video and audio from Officers Sontgerath and
29
30   Anderson's body cams, and the Jack in the Box security videos.  Counsel for

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 1

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

defendants has reviewed the body cam and surveillance video and made a good faith effort to respond to plaintiff's allegations based on that review. However, due to background noise in the Jack in the Box, persons sometimes talking over one another and at various volume levels, and limitations in the equipment used to view and listen to the video, it is possible that some purported statement or event actually depicted in the audio/video was missed or misheard. Accordingly, to the extent that the audio/video reflects words spoken or events that occurred, in a way that conflicts with defendants' response to plaintiff's specific allegations, defendants accept the audio/video.

## ANSWER

Defendants City of Pullman Police Department, Doug Anderson, Michael Sontgerath, Gary Jenkins, and Christian Tennant, by and through their undersigned counsel, answer plaintiff's Complaint for Damages as follows:

## PARTIES

1.    On information and belief, defendants admit that, during the academic year, North resides in Pullman, Washington. On information and belief, defendants also admit that plaintiff's permanent residence is in Poulsbo, Washington in Kitsap County. The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied for lack of knowledge.

2.    Deny for lack of knowledge.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 2

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

3.      Deny that defendant City of Pullman Police Department (PPD) is a municipal entity existing pursuant to and under the laws of the City of Pullman and the State of Washington.  Admit that the PPD conducts its operations in part in the City of Pullman, located in Whitman County, Washington.  Admit that the PPD receives some federal funds under federal programs and statutes.  The allegation(s) regarding PPD's duties and responsibilities constitute a legal conclusion.  Accordingly, those allegations are neither admitted nor denied.

4.      Admit that defendant Douglas Anderson is a law enforcement officer with the PPD.  Admit that, at all times alleged in plaintiff's Complaint, Officer Anderson was acting within the course and scope of his employment and under the color of law.  Admit that Officer Anderson resides in Whitman County, Washington.  The allegation regarding Officer Anderson's duties and responsibilities constitutes a legal conclusion and, accordingly, that allegation is neither admitted nor denied.

5.      Admit that defendant Michael Sontgerath is a law enforcement officer with the PPD.  Admit that, at all material times, Officer Sontgerath was acting within the course and scope of his employment and under the color of law.  Admit that Officer Sontgerath resides in Whitman County, Washington.  The allegation regarding Officer Sontgerath's duties and responsibilities constitutes a legal conclusions.  Accordingly, that allegation is neither admitted nor denied.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

6.     Admit that defendant Gary Jenkins is the PPD Chief of Police. Deny the broad allegation that Chief Jenkins is "responsible for planning, creating, implementing and enforcing all policies of the PPD," with the qualification that Chief Jenkins has a role in creating and enforcing PPD policy. The allegations regarding Chief Jenkins' duties and responsibilities constitute legal conclusions and, accordingly, they are neither admitted nor denied.  Admit that Chief Jenkins resides in Whitman County, Washington.

7.     Admit that defendant Christian Tennant is the Operations Commander with the PPD.   Admit that Commander Tennant has some responsibility for managing PPD officer training.  Admit that, as the Operations Commander, Commander Tennant serves as the acting Chief of Police in Chief Jenkins' absence.   Admit that Commander Tennant reports directly to Chief Jenkins.   Admit that Commander Tennant resides in Whitman County, Washington.   The allegations regarding Commander Tennant's duties and responsibilities constitute legal conclusions and, accordingly, they are neither admitted nor denied.

8.     Admit that the acts and omissions attributed to the individual defendants were carried out within the course and scope of the individual defendant's employment.  Admit that the acts/omissions alleged were consistent with the PPD's policies and practices.  Deny that the PPD, Chief Jenkins and

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 4

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Commander Tennant "ratified" the conduct of each of the individual defendants to the extent the term "ratified" is used in an effort to establish *Monell* liability. Deny that any of the defendants acted with the deliberate and intentional indifference and/or willful disregard for the rights, safety and wellbeing of plaintiff. In all other respects, the allegations set forth in this paragraph of plaintiff's Complaint are denied.

9.     Admit that, at all times material hereto, the individual defendants were acting within the course and scope of their employment with the City of Pullman. Deny that an agency relationship existed among and between the individual defendants.

10.     As the allegations set forth in this paragraph of plaintiff's Complaint constitute a legal conclusion, the allegations are neither admitted nor denied.

### JURISDICTION & VENUE

11.     Admit this Court has original jurisdiction over plaintiff's federal claims, and supplemental jurisdiction over plaintiff's state law claims. Admit that venue is proper in the United States District Court for the Eastern District of Washington.

12.     Admit.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 5

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

## FACTUAL ALLEGATIONS

13.    This paragraph of plaintiff's Complaint does not allege specific facts from which this case arises.  Rather, it is a general statement regarding the role of "local police."  As this paragraph of plaintiff's Complaint does not allege specific facts regarding any of the named defendants, the allegations in this paragraph of plaintiff's Complaint are neither admitted nor denied.

14.    Admit that officers of the PPD are required to undergo periodic training in "use of force."  Admit that officers of the PPD are sometimes called upon in non-criminal situations to provide or facilitate health and/or safety assistance to citizens.  Admit that the law currently requires officers of the PPD to complete specialized training entitled "Crisis Intervention Training" (CIT) and that CIT training is overseen by the Washington State Criminal Justice Training Commission.

15.    This paragraph of plaintiff's Complaint consists of plaintiff's interpretation of CIT training, along with argumentative assertions regarding that training.  Because no specific curriculum is identified that would allow defendants to evaluate the accuracy of the allegations, they are denied for lack of knowledge.

16.    This paragraph of plaintiff's Complaint consists of plaintiff's interpretation of CIT training, along with argumentative assertions regarding that

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 6

training.    Because  no  specific  curriculum  is  identified  that  would  allow

defendants to evaluate the accuracy of the allegations, they are denied for lack of

knowledge.

17.    Defendants admit it is likely PPD officers sometimes encounter

persons with Schizophrenia and Schizoaffective Disorder, with the qualification

that officers are not qualified to diagnose mental conditions or disorders and that

officers may encounter individuals who have been given that diagnoses and who

qualify  for  that  diagnosis,  without  officers  being  aware  of  that.    Otherwise,

because  this  paragraph  of  plaintiff's  Complaint  consists  of  argumentative

assertions about those mental disorders, the allegations are denied.

18.    This paragraph of plaintiff's Complaint appears to be a recitation of

portions of written CIT training materials.  Because no specific CIT curriculum

is  identified,  and  because  responding  to  each  and  every  assertion  in  this

paragraph of plaintiff's Complaint regarding CIT curriculum would require

defendants to research that specific written curriculum, the allegations are denied

for lack of knowledge.

19.    Admit  that  Officers  Anderson  and  Sontgerath  completed  the

required  CIT  course  on  March  30  and  31,  2016,  respectively.    Admit  that

Officers Anderson and Sontgerath were thus trained on the components of the

CIT  curriculum  presented  to  them  on  March  30  and  31.    But  because  this

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 7

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

paragraph of plaintiff's Complaint refers to the "foregoing tenants" of CIT training, no specific written curriculum is identified and answering the allegation that the officers were trained on the "foregoing tenants" would require defendants to research all aspects of the specific CIT written curriculum from which these allegations are derived, the allegations contained in this paragraph of plaintiff's Complaint are otherwise denied for lack of knowledge.

20.    Admit that officers with the Pullman Police Department are authorized to use various methods of force when carrying out their law enforcement duties.  Admit that force options include the taser and the lateral vascular neck restraint (LVNR).  Admit that both methods require specialized training.  Admit that the PPD Policy and Procedures Manual requires all officers to undergo specialized training designed, in part, to "enhance the member's discretion, judgment and skill in using use of force options."

21.    Admit that all PPD officers are required to complete a six hour initial certification course in order to use a taser in the line of duty.  Admit that the course curriculum was developed by Taser International, now Axon Enterprise, Inc., the manufacturer of the tasers used by the PPD.  Admit that PPD written policy requires officers to complete an annual recertification course and pass a deployment test.  Admit that PPD's written policy provides that before an

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 8

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

officer is allowed to carry a taser, he must complete and pass the annual recertification training.

22.    Admit that Officer Anderson did not participate in taser re-certification training in 2015 or 2016.  Admit that, according to PPD's written policy, Officer Anderson was thus not "authorized" to carry or use a taser at the time of the incident alleged, with the qualification that, because of his prior training, Officer Anderson was fully qualified to carry and use a taser, as evidenced by the manner in which the taser was deployed in this incident.

23.    Admit that LVNR is a force technique that can be used to restrain or control a person, including subjects who are resisting being taken into custody. Admit that the technique works by reducing the circulation of blood to the brain until the subject either stops resisting or loses consciousness.  Admit that the technique involves the officer placing his or her arm around the neck of the subject and applying pressure to the carotid arteries on either side of the neck and then increasing the pressure until the objective is achieved.  Admit that LVNR is an effective law enforcement tool and, like other law enforcement tools, can be dangerous if not performed correctly.  Admit that, before the technique can be deployed, an officer must complete an eight hour initial training course developed by the National Law Enforcement Training Center.  Admit that the PPD policy manual requires PPD officers to successfully complete an annual

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 9

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

recertification training course.  Admit that, according to the PPD manual, officers who fail to complete the annual recertification training are not specifically authorized to use LVNR.

24.    Admit that Officer Anderson did not undergo LVNR recertification training in any year after 2013.  Admit that, according to PPD written policy, Officer Anderson was thus not "authorized" to use LVNR at the time of the events alleged herein, with the qualification that Officer Anderson was fully qualified to utilize the technique, as evidenced by the manner in which he deployed the technique in this instance.

## ALLEGATIONS GIVING RISE TO CLAIM

25.    Deny for lack of knowledge.

26.    Deny for lack of knowledge.

27.    Admit that the Moscow Police issued a welfare check and contacted the Pullman Police Department for assistance.  Admit that Officer Songerath was on duty at the time and responded to the request by searching for North's Lexus around NE Lower Drive in Pullman.  Admit that Officer Songerath responded to NE Lower Drive and searched for the vehicle, but that he was unable to locate it.  Admit that he advised dispatch of that.  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 10

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

28.    Admit that, at approximately 3:10 a.m. on the morning of August 18, 2016 North walked into the Jack in the Box restaurant on NE Stadium Way in Pullman and approached an individual later determined to be the night manager.  Admit that this person called dispatch and stated that a male inside the business, later determined to be North, was very agitated and looked scared.  Admit that this person, later determined to be Olin Braun, the night manager, called 911 at North's request.   The remaining allegations contained in this paragraph of plaintiff's Complaint are denied for lack of knowledge.

29.    Admit that Officer Sontgerath and Officer Anderson arrived at JIB in separate cars.  Admit that both were wearing police body cams that captured events that transpired after the officers entered JIB, both on video and audio.  Admit that events were also captured on JIB's surveillance system which consisted of four cameras positioned in the restaurant.  Otherwise, the allegations set forth in this paragraph of plaintiff's Complaint are denied.

30.    Deny that, upon entering the restaurant, both officers knew North was the subject of an earlier welfare check issued by the Moscow Police Department.  Admit that both officers eventually witnessed North exhibiting behaviors, and making statements consistent with a mental health problem, but also consistent with a drug overdose or reaction.  Admit that, at various times, while interacting with Officer Sontgerath and Anderson, North was rotating his

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 11

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

right hand and snapping his right fingers. Admit that North also made comments about the girl he was with earlier, whom officers eventually learned to be Ms. Fountain. The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied as phrased.

31.    Admit that, while talking with officers, North removed Fountain's wallet and phone from his pocket. Admit that, at some point, Officer Sontgerath patted North down and did not find any weapons, alcohol or illegal drugs. Otherwise, the allegations contained in this paragraph of plaintiff's Complaint are denied as phrased.

32.    Admit that, at this point during their interaction with North, the officers did not assure North that Fountain was safe, with the qualification that, at this time, Officers Sontgerath and Anderson were unaware of that. Admit that North asked Officer Sontgerath if the two of them could sit down and talk, and that Officer Sontgerath, for officer safety reasons, refused to sit down with North, with the qualification that North later asked Officer Sontgerath if he (North) could sit down and Officer Sontgerath allowed North to do that.

33.    Admit that, at some point after North sat at a small table, Officer Sontgerath asked North if he wanted to go talk to a mental health professional. Admit that North eventually stated he wanted to go to the hospital to talk to a mental healthcare professional and indicated he would like Officer Sontgerath to

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 12

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

go there with him, and that North made statements indicating he was willing to follow Officer Sontgerath to the hospital.  Admit that Officer Sontgerath stated "Why don't we go do that," referencing North following him to the hospital. Deny that Officer Sontgerath confirmed that North was not under the influence of drugs.  Admit that Officer Sontgerath discussed with North Officer Sontgerath driving to the hospital with North following.  In all other respects, the allegations contained in this paragraph of plaintiff's Complaint are denied.

34.    Admit that, after Officers Sontgerath and North had a discussion about North following Officer Sontgerath to the hospital, North made the statement referenced.  Otherwise, the allegations contained in this paragraph of plaintiff's Complaint are denied as phrased and characterized.

35.    Admit that Officer Sontgerath, after hearing North utter the words referenced, stated "What Kyle?"  Admit that, after Officer Sontgerath said "What Kyle?" Officer Sontgerath and North exchanged additional words, including the words quoted.

36.    Admit that, at this point, North stood up and began moving toward the door.  Admit that North asked Officer Sontgerath to go out the door first. Admit that Officer Sontgerath refused, with the qualification that this was for officer safety reasons, and that Officer Sontgerath made the statement quoted.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 13

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied as characterized and phrased.

37.    Admit that, after Officer Sontgerath told North that he was going to walk behind North, and North was not going to walk behind him, North began to walk backward, away from officers, and stated, among other things, "But I'm following you there?"  The allegation regarding the amount of time that had passed since Officer Sontgerath arrived at JIB is denied for lack of knowledge, with the qualification that defendants do not dispute that the amount of time was 13 minutes if that is what the body cam videos reveal the elapsed time to have been.  Admit that, at some point, Officer Sontgerath stated: "I'm not here to play games, Kyle."  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied as phrased/characterized.

38.    Admit that, after Officer Sontgerath stated "I'm not here to play games, Kyle," North moved away from the exit door and went and stood next to a wall at the end of the service counter.  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied as phrased/characterized.

39.    Admit that Officer Sontgerath told North he would get arrested if he went back behind the service counter.  Admit that North made the statement "Of course not" in reference to him going behind the service counter.  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 14

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

40.    Admit that Officer Sontgerath, at some point made the statement to North, when North was standing against the wall at the end of the service counter, that if Officer Sontgerath needed to take North to the hospital himself, he would.  Admit that, at some point during this exchange or this interaction with Officer Sontgerath, North made the statement "What are they trying to do to me?"   Otherwise, the allegations contained in this paragraph of plaintiff's Complaint are denied.

41.    Admit that, at one point, while still standing against the wall, North put his hands together in a praying gesture and stated that he wanted to call his parents.   Admit that North then displayed behavior and made statements consistent with a hallucination.   Admit that, at some point, North made the statement that he wanted a drink of water.  Otherwise, the allegations contained in this paragraph of plaintiff's Complaint are denied as phrased/characterized.

42.    Admit that, at this point, North began to walk toward the officers, and Officer Sontgerath grabbed North by both wrists, with the qualification that Officer Sontergrath, at this point, had decided to take North into protective custody.  Deny that Officer Sontgerath pushed North up against a wall.  Admit that Officer Sontgerath stated that if North fought him, he was going to "get hurt", meaning that if North resisted, officers might be compelled to use pain compliance techniques which, by definition, cause pain.  Admit that North made

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 15

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

the statement "Yes sir" at some point, with the qualification that he continued to resist.    Otherwise, the allegations set forth in this paragraph of plaintiff's Complaint are denied as phrased/characterized.

43.    Admit that Officer Sontgerath eventually grabbed North's right arm and Officer Anderson grabbed North's left arm.  Deny that North offered no resistance.  Admit that Officer Sontgerath again stated that North was going to "get hurt," in reference to the officers' potential use of pain compliance techniques.  Admit that both officers pulled North's arms behind his back for the purpose of placing North in handcuffs, and pushed North to his knees and then face down onto the floor.  Deny that North did not resist.  Admit that Officer Sontgerath again stated North was going to get hurt, in reference, again, to the use of pain compliance techniques if North continued to resist.  Otherwise, the allegations set forth in this paragraph of plaintiff's Complaint are denied as phrased/characterized.

44.    Admit that, at some point, while North was face down on the floor, he screamed out and stated that "He broke my arm."  Otherwise, the allegations set forth in this paragraph of plaintiff's Complaint are denied as phrased/characterized.

45.    Admit that Officer Sontgerath proceeded to place North in handcuffs and informed North he was in protective custody and was going to be

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 16

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

taken to the hospital and that he was expected to cooperate. Otherwise, the allegations set forth in this paragraph of plaintiff's Complaint are denied as phrased/characterized.

46.    Deny for lack of knowledge that North was developing rhabdomyolysis. Deny that Officer Sontgerath showed no concern for North's welfare. Admit that, at some point, Officer Sontgerath and North made the quoted statements. However, plaintiff's argumentative characterization of these statements is denied.

47.    The allegations contained in this paragraph of plaintiff's Complaint are argumentative, and essentially constitute plaintiff's counsel's interpretation of the facts. Accordingly, the allegations in this paragraph of plaintiff's Complaint are denied.

48.    Admit that, after North was handcuffed, officers brought North to his feet and ordered him to walk toward the door of the restaurant. Admit that, as they passed the small office, North hooked his leg inside the office door and dropped to the ground with his upper torso in the office and his right leg extended out of the office. Admit that, during this stage of the encounter, North uttered the quoted words. In all other respects, the allegations contained in this paragraph of plaintiff's Complaint are denied.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES: Page 17

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

49.    Admit that Officer Sontgerath then asked one of the JIB employees to call paramedics, stating that North would need to be transported to the hospital.  Admit that, with North on the floor in the small office and his hands cuffed behind him, Officer Anderson pressed down on North's arms, with the qualification that this was in response to North continuing to struggle and resist. Admit that, at some point, in the context of North's resistance to the officers' efforts to remove him from the small office, Officer Anderson made the quoted statement.

50.    Admit that North, at some point while in the small office, began to make statements that could be described as praying.   Admit that Officer Anderson, during this stage of the encounter, shouted commands at North, including the demand that he straighten out his legs.  Admit that, as a reaction to North's resistance, Office Sontgerath, at some point, stated that North was "Not going anywhere."

51.    Admit that, at this point, North remained on the floor of the small office and continued resisting the officers' efforts to remove him.  Admit that, during this stage of the encounter, North made statements consistent with him praying and that the statements included the quoted language.  Admit that, at some point during this stage of the encounter, Officer Anderson stated that North

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 18

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

should pray for himself. In all other respects, the allegations contained in this paragraph of plaintiff's Complaint are denied.

52.    Admit that, while officers waited for paramedics to arrive, North remained handcuffed and on the office floor, and that he continued to make statements consistent with praying. Admit that officers continued their efforts to remove North from the small office. Admit that officers' efforts included grabbing North's right leg and Officer Anderson grabbing North's arm in an attempt to pull North out of the small office. Admit that North resisted these efforts and that the resistance included him screaming and pushing off the office wall with his left leg. Admit that North eventually ended up partially under a small desk with his head between a metal rack and a filing cabinet.

53.    Admit that Officer Anderson, in a continued effort to subdue North and remove him from the small office, attempted to lift North to a standing position. Admit that Officer Anderson, at some point, and in response to North's continued resistance, applied his taser to North three times in drive stun mode. Admit that, during this course of officers' encounter with North, Officer Anderson did state, with respect to his efforts to get North out from under the small table and out of the small office "Get out!"

54.    Admit that the taser report indicates Officer Anderson's deployments of the taser in drive stun mode totaled 16 seconds of current.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES: Page 19

Admit that, at one point, North made the statement about repenting.  Admit that, after the drive stuns had no apparent effect and North continued to resist, Officer Anderson stated to North "I'm gonna put you out." in deference to Officer Anderson's decision to deploy a lateral vascular neck restraint as a way to control North and remove him from the small office.  Admit that, at some point, North uttered the quoted words, with the qualification that, despite these statements, he continued to resist.

55.    Admit that Officer Anderson eventually placed his left arm around North's neck in a lateral vascular neck restraint and that, while doing this, he brought North to a standing position while telling North to "get up."  The remaining allegations contained in this paragraph of plaintiff's Complaint are denied for lack of knowledge.

56.    Admit that, after North continued to resist, Officer Anderson applied the lateral vascular neck restraint to the point where the desired result was achieved and North lost consciousness and fell silent.  Admit that, at some point during this process, North stated "help me."  Admit that Anderson asked Officer Sontgerath if North was "out" and that Officer Sontgerath confirmed that he was, and that North was then lowered to the floor.  The remaining allegations contained in this paragraph of plaintiff's Complaint are denied.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 20

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

57.    Admit that while North was unconscious on the floor, Office Sontgerath pulled North to the area just outside the office.  Admit that North remained unconscious for approximately 22 seconds.  Admit that, after he woke up, North would have seen paramedics around him and that he uttered the quoted words.  In all other respects, the allegations contained in this paragraph of plaintiff's Complaint are denied.

58.    Admit that after the paramedics administered the sedative Ketamine, Officer Sontgerath removed the handcuffs.  Admit that North was then placed on a gurney and taken to the emergency room at Pullman Regional Hospital.  Admit that, as a result of his struggle with officers and his refusal to comply with the officers' commands, North, in addition to an arm injury, had abrasions on his head, back, shoulders, neck, chest, lower lip and knees, as well as some bruising.

59.    Admit that, while North was at the emergency room, Dr. Brown asked Officer Sontgerath how the injuries happened, and that, as part of this explanation, Sontgerath stated that he had North's right arm behind his back and, at one point "reamed on it."  Admit that Officer Sontgerath also stated that North was combative and that officers had no choice but to use the force that they ended up deploying.  Admit that Officer Sontgerath also made a comment about officers returning safely to their families.  Admit that Officer Sontgerath did not advise Dr. Brown of a many of details of the officers' encounter with North,

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 21

including the officers pulling on North's right arm, pressing on his right shoulder, and North's behavior in the small office, including refusing officers' commands and struggling with officers, North's no apparent reaction to the taser, and that Officer Anderson only deployed a lateral neck restraint to control North and remove him from the small office.

60.    Admit that Officer Sontgerath conceded that some of North's cuts and bruises were from his struggles with officers at JIB.    The remaining allegations contained in this paragraph of plaintiff's Complaint are denied for lack of knowledge.

61.    Admit.

62.    Admit that Officers Anderson and Sontgerath completed a post-incident "Use of Force" report, and that Commander Chris Tennant and Chief Jenkins reviewed both reports as well as both body cam videos.    Admit that, because the officers' conduct was determined to be consistent with Department policies and procedures, no corrective action was taken against either officer and no further investigation was done.    Admit that Officer Anderson's taser was not confiscated and that he continued to use it.    Admit that Commander Tennant indicated in a use of force spreadsheet that North was under the influence of intoxicants, with the qualification that this was simply the result of Commander

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 22

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Tennant's review of the officers' use of force reports.  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

63.    Deny for lack of knowledge.

64.    Deny.

## FIRST CLAIM FOR RELIEF
### Violation of 42 US § 1983: The Fourth Amendment

65.    Defendants reassert their answers to the allegations contained in paragraphs 1 through 64 of plaintiff's Complaint.

66.    As the allegations set forth in this paragraph of plaintiff's Complaint constitute legal conclusions, they are neither admitted nor denied.

67.    As the allegations set forth in this paragraph of plaintiff's Complaint constitute legal conclusions, they are neither admitted nor denied.

68.    Admit that North was not accused of any criminal activity or the subject of any civil complaint.  Admit that North did not have a weapon.  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

69.    Deny.

70.    Admit that by 3:40 a.m. North was handcuffed and face down on the floor of the JIB office.  Admit that, at some point during the encounter with North, Officer Sontgerath made the comment that "he isn't going anywhere."

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 23

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Admit that, while North was in the small office, Officer Anderson tased North three times in rapid succession.  Admit that, because North continued to struggle, and the tasing had no apparent effect, Officer Anderson then pulled North to a standing position and eventually rendered him unconscious via a lateral neck restraint.  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

71.    Deny.

72.    Admit that Chief Jenkins and Commander Tennant have certain responsibilities for training.  Otherwise, the allegations set forth in this paragraph of plaintiff's Complaint are denied.

73.    Deny.

74.    Admit that any time an officer uses a taser, electronic data from the taser is eventually downloaded to an evidence database.  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

75.    Deny.

76.    Deny.

77.    Admit that Chief Jenkins and Commander Tennant have supervisory responsibility over Officers Sontgerath and Anderson.  Admit that Officer Anderson was one of the officers dispatched to respond to the situation at

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 24

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

the Jack in the Box on August 18, 2016.  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

78.    Deny.

79.    Admit that no disciplinary or corrective action has been taken against any officer in connection with the events of August 18, 2016.   The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

80.    Admit that the PPD did not confiscate Officer Anderson's taser. The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

81.    The remaining allegations set forth in this paragraph of plaintiff's constitute either a legal conclusion or argument regarding the law.  Accordingly, the allegations are neither admitted nor denied.

82.    The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied as phrased.

83.    Deny.

## SECOND CLAIM FOR RELIEF
### Negligence

84.    Defendants reassert their answers to the allegations contained in paragraphs 1 through 64 and 66 through 83 of plaintiff's Complaint.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 25

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

85.    The first sentence of this paragraph of plaintiff's Complaint constitutes a legal conclusion.  Accordingly, the allegation is neither admitted nor denied.  Deny that defendants breached any duty owed to plaintiff.

86.    Deny.

87.    Because the allegations contained in this paragraph of plaintiff's Complaint essentially constitute argumentative statements regarding the officers' encounter with North, they are denied.

88.    Admit that, at one point, North stated "I'm one of you."  Admit that Officer Anderson stated to North "you don't work here."  Admit that, prior to the officers' arrival, North talked with JIB employees.  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

89.    Admit that, at one point during his encounter with officers, North began making statements consistent with praying, and that, among other things, he asked that the officers be forgiven.  Admit that, at one point, Officer Anderson stated "we haven't done anything wrong" and "you should pray for yourself."  Admit that, at some point, Officer Anderson stated that North should stop "babbling."  Admit that Officer Anderson referenced North having "inner demons."  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

90.    Deny.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 26

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

91.    The first sentence of this paragraph of plaintiff's Complaint constitutes a legal conclusion.  Accordingly, it is neither admitted nor denied. The second sentence is denied.

92.    Admit that Officers Anderson and Sontgerath advised dispatch, the medics and the medical providers at PRH of their good faith belief that North was under the influence of some sort of drug.  Deny that both knew North was not under the influence.  Deny that officers thus knew their statements were untrue.  Deny for lack of knowledge the allegation that Fountain denied that North had taken drugs.  Admit that a search of North's car and person did not reveal drugs.  Deny that there was no "evidence" of drugs on North's person, in that he had an empty prescription pill bottle with him at the Jack in the Box. Deny that Officer Sontgerath was "completely comfortable" allowing North to drive himself to the hospital.  Admit that Officer Sontgerath's written report reveals that he asked North if he felt comfortable driving, and that North stated that he did.  Admit that Commander Tennant's use of force written record indicates that drugs were involved, with the qualification that this was simply derived from the officers' use of force reports.  In all other respects, the allegations contained in this paragraph of plaintiff's Complaint are denied.

93.    Deny.

94.    Deny.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

95.    As the allegations set forth in this paragraph of plaintiff's constitute a legal conclusion, they are neither admitted nor denied.  Deny that the conduct of the defendants created a dangerous situation that resulted in North's injuries.

96.    Deny.

### THIRD CLAIM FOR RELIEF
### Disability Discrimination

97.    Defendants reassert their answers to the allegations contained in paragraphs 1 through 64, 66 through 83, and 85 through 96 of plaintiff's Complaint.

98.    As the allegations contained in this paragraph of plaintiff's Complaint constitute a legal conclusion, they are neither admitted nor denied. Deny that North was denied the privileges of law enforcement safety services and was affirmatively harmed.

99.    The first sentence of this paragraph of plaintiff's Complaint is denied.  Admit that Officer Sontgerath, in reference to North's refusal to cooperate, stated that North was going to be subjected to police force if he continued to resist.  Admit that officers warned North he would be tased if he continued to resist and refuse officer commands.  Admit that, consistent with this warning, and because North continued to refuse officer commands and to struggle, he was tased three times.

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 28

100.   Deny.

## FOURTH CLAIM FOR RELIEF
### Outrage

101.   Defendants reassert their answers to the allegations contained in paragraphs 1 through 64, 66 through 83, 85 through 96, and 98 through 100 of plaintiff's Complaint.

102.   Deny.

103.   Deny.

## FIFTH CLAIM FOR RELIEF
### Battery

104.   Defendants reassert their answers to the allegations contained in paragraphs 1 through 64, 66 through 83, 85 through 96, 98 through 100, and 102 through 103 of plaintiff's Complaint.

105.   Deny.

106.   Deny.

## SIXTH CLAIM FOR RELIEF
### Assault

107.   Defendants reassert their answers to the allegations contained in paragraphs 1 through 64, 66 through 83, 85 through 96, 98 through 100, 102 through 103, and 105 through 106 of plaintiff's Complaint.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

108.   Admit that Officers Anderson and Sontgerath made statements to North in the way of warnings and commands that were intended to cause him to apprehend the use of force and physical discomfort if he continued to resist.  The remaining allegations set forth in this paragraph of plaintiff's Complaint are denied.

109.   Deny.

## AFFIRMATIVE DEFENSES

For further answer to plaintiff's Complaint as affirmative defenses thereto, defendants allege as follows:

## FIRST AFFIMATIVE DEFENSE

The plaintiff's claims under Section 1983, in whole or in part, are barred by qualified immunity.

## SECOND AFFIRMATIVE DEFENSE

That plaintiff's common law claims are barred, in whole or in part, by state law qualified immunity and by the immunity provisions of RCW 71.05.120.

## THIRD AFFIRMATIVE DEFENSE

Because of what responding officers were told about North and what they saw and observed at the Jack in the Box, all of North's claims are barred because officers had reasonable cause to believe North was suffering from a mental

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 30

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

disorder or a substance use disorder and that he presented an imminent likelihood of serious harm or was in imminent danger because of being gravely disabled.

## FOURTH AFFIRMATIVE DEFENSE

The City of Pullman does not have any municipal or "official capacity" liability under 42 USC § 1983 based upon *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978).

## FIFTH AFFIRMATIVE DEFENSE

All actions of the defendants were performed in good faith, were reasonable, based on probable cause, and were within these defendants' lawful authority.

## SIXTH AFFIRMATIVE DEFENSE

Defendants did not violate any of plaintiff's Constitutional or federally protected rights.

## SEVENTH AFFIRMATIVE DEFENSE

The City of Pullman Police Department is not a legal entity capable of being sued.  Accordingly, the City of Pullman Police Department must be dismissed.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

### EIGHTH AFFIRMATIVE DEFENSE

The claims against Gary Jenkins and Christian Tennant are duplicative of a *Monell* claim and, accordingly, Gary Jenkins and Christian Tennant should be dismissed.

WHEREFORE, having fully answered plaintiff's Complaint herein, defendants pray that the same be dismissed with prejudice, that plaintiff take nothing thereby, and that defendants be awarded their costs and attorney fees under 42 USC § 1988 and RCW 4.24.350, and such other relief as the Court may deem just and equitable.

### JURY DEMAND

Defendants demand a trial by jury.

DATED this 28th day of September, 2018.

EVANS, CRAVEN & LACKIE, P.S.

By ____ s/ Christopher J. Kerley ____
CHRISTOPHER J. KERLEY, #16489
Attorneys for Defendants
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., Suite 250
Spokane, WA  99201
(509) 455-5200
(509) 455-3632 facsimile
ckerley@ecl-law.com

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 32

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2

## CERTIFICATE OF SERVICE

3
4
5

I hereby certify that on **September 28, 2018**, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF System which will send

6
7

notification of such filing to the following:

8
9
10
11

Erica Krikorian
CREER LEGAL
11900 NE First Street, Suite 300G
Bellevue, WA  98005
erica@creerlegal.com

12
13
14
15
16
17

Brian H. Krikorian
LAW OFFICES OF BRIAN H. KRIKORIAN
P.O. Box 6905
11900 NE 1st Street, Suite 300, Bldg. G
Bellevue, WA  98005
bhkrik@bhklaw.com

18
19
20
21

Laura D. McAloon
McALOON LAW PLLC
421 W. Riverside Avenue, Suite 515
Spokane, WA  99201
laura@mcaloon-law.com

22
23
24
25
26

EVANS, CRAVEN & LACKIE, P.S.

By ___s/ Christopher J. Kerley_____
CHRISTOPHER J. KERLEY, #16489
Attorneys for Defendants

27
28
29
30

ANSWER TO PLAINTIFF'S
COMPLAINT FOR DAMAGES:  Page 33

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632